# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

GREGORY OWENS,

      Petitioner,

v.                                    Case No. 8:24-cv-717-WFJ-NHA

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

      Gregory Owens, a Florida prisoner, initiated this action by filing a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent filed a response opposing the petition. (Doc. 7). Although afforded the opportunity, Mr. Owens did not file a reply. After careful review, the petition is **DENIED**.

## I.    Background

      Mr. Owens was charged in five separate cases with the following offenses: one count of driving while license suspended, one count of possession of a firearm by a felon, three counts of sale of a controlled substance, three counts of possession with intent to sell a controlled substance, three counts of unlawful use of a two-way communications device, and three counts of possession of drug paraphernalia. (Doc. 7-1, Exs. 1, 21-24). Mr. Owens entered an open plea to each charge. (*Id.*, Ex. 4; *id.*, Ex. 9, at 8). The trial court found that he qualified as a habitual felony offender ("HFO") and sentenced him to a total term of

1

thirty years' imprisonment.[1] (*Id.*, Ex. 8, at 56-68). Mr. Owens filed a notice of appeal, but he ultimately agreed to dismiss the appeal. (*Id.*, Exs. 6-7, 12, 29).

While the appeal was pending, Mr. Owens moved to correct a sentencing error under Florida Rule of Criminal Procedure 3.800(b). (*Id.*, Ex. 10). He argued that the trial court improperly sentenced him as an HFO on the three counts of possession with intent to sell a controlled substance. (*Id.*) The court granted the motion. (*Id.*, Ex. 11, at 3). It removed the HFO designation from the three counts and reduced the sentence for each from thirty to fifteen years. (*Id.*) Because the other counts were unaffected, Mr. Owens's total sentence remained thirty years' imprisonment.

Next, Mr. Owens sought postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Exs. 13, 17). The postconviction court denied relief, and the appellate court affirmed without opinion. (*Id.*, Exs. 14, 16, 18, 20). This federal habeas petition followed. (Doc. 1).

## II.    Standards of Review

### A.    AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or

---

[1] Specifically, Mr. Owens was sentenced to concurrent terms of thirty years' imprisonment for possession of a firearm by a felon, thirty years' imprisonment for each count of sale of a controlled substance, thirty years' imprisonment for each count of possession with intent to sell a controlled substance, ten years' imprisonment for driving while license suspended, ten years' imprisonment for each count of unlawful use of a two-way communications device, and time served for possession of drug paraphernalia. (Doc. 7-1, Ex. 10, at 1-3). For each offense except possession of drug paraphernalia, Mr. Owens was sentenced as an HFO. (*Id.*)

treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in

federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The appellate court in Mr. Owens's case affirmed the denial of postconviction relief without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

## B.    Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th

Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

### C.    Ineffective Assistance of Counsel

Mr. Owens alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Mr. Owens must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Mr. Owens must show "a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential."). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## III.    Discussion

### A.    Ground One, Sub-Claim A—Failure to Inform Mr. Owens of Ineligibility for Gain Time and of Mandatory Minimum Sentence

Mr. Owens contends that trial counsel was ineffective for failing to inform him that, as an HFO, he "would be ineligible for gain time." (Doc. 1 at 5). He also faults counsel for not advising him that he would be subject to a mandatory minimum sentence if he were

designated an HFO. (*Id.*) Furthermore, counsel was allegedly deficient for failing to object when the trial court neglected to inform Mr. Owens of these matters. (*Id.*)

The postconviction court reasonably rejected this claim. It began by addressing gain time. According to the court, "eligibility or ineligibility for gain time is . . . a collateral consequence of a plea." (Doc. 7-1, Ex. 14, at 3). "Collateral consequences" include "those matters not within the sentencing authority of the state trial court." *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010). Citing Florida law, the court held that "[c]ounsel cannot be found deficient for failing to advise a defendant of a collateral consequence of a plea." (Doc. 7-1, Ex. 14, at 3). This ruling was neither "contrary to" nor "an unreasonable application" of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

"'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014). The Supreme Court has repeatedly cautioned lower courts against framing its decisions at "a high level of generality." *Nevada v. Jackson*, 569 U.S. 505, 512 (2013); *see also Brown v. Davenport*, 596 U.S. 118, 136 (2022) (noting that "holdings that speak only at a high level of generality" "cannot supply a ground for relief" under AEDPA). Accordingly, "it is not 'an unreasonable application of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *see also Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1288 (11th Cir. 2012) ("The Supreme Court has reiterated, time and again, that, in the absence of a

clear answer—that is, a holding by the Supreme Court—about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law.").

"No clearly established law addresses whether [Mr. Owens's] counsel rendered constitutionally deficient performance by failing to properly advise him about his [gain]-time credits before he pled guilty." *Hernandez v. Grounds*, 628 F. App'x 541, 541 (9th Cir. 2016). "Florida law considers gain time to be a collateral consequence of a plea." *Lagerstrom v. Sec'y, Dep't of Corr.*, No. 20-80531-CIV, 2023 WL 2434218, at *8 (S.D. Fla. Feb. 1, 2023) (collecting cases), *adopted by* 2023 WL 2071473 (S.D. Fla. Feb. 17, 2023). And the Supreme Court has yet to address whether "there may be circumstances under which advice about a matter deemed collateral violates" the right to effective assistance of counsel. *Chaidez v. United States*, 568 U.S. 342, 350 (2013). Without Supreme Court authority on point, Mr. Owens cannot show that the postconviction court unreasonably applied federal law by finding that counsel was not required to inform him of his ineligibility for gain time. *See Woodall*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error."); *Lagerstrom*, 2023 WL 2434218, at *8 ("[N]umerous courts have rejected habeas petitions arguing that trial counsel rendered ineffective assistance by failing to explain, predict, or give advice regarding Florida gain time calculations prior to the entry of a plea." (collecting cases)).

8

The postconviction court also rejected Mr. Owens's argument that counsel failed to inform him of the "minimum mandatory sentences that would result from his plea." (Doc. 7-1, Ex. 14, at 3). The court explained that Mr. Owens "was not sentenced to serve any minimum mandatories." (*Id.*) This ruling was correct. Mr. Owens's claim rests on a misunderstanding of HFO sentencing. The "HFO provision allows courts to sentence a defendant who qualifies as an HFO to *an extended term of imprisonment*." *Foulks v. State*, 306 So. 3d 1178, 1185-86 (Fla. 3d DCA 2020) (emphasis in original). Thus, the HFO statute "increase[s] the maximum sentence that can be imposed," *id.*, but "it does not require a mandatory minimum sentence." *Peek v. State*, 143 So. 3d 1101, 1102 (Fla. 5th DCA 2014). For example, a second-degree felony "would normally carry a maximum sentence of fifteen years' imprisonment, but the HFO statute sets a maximum sentence at thirty years' imprisonment." *Peek*, 143 So. 3d at 1101. Because Mr. Owens was not subject to—and did not receive—a mandatory minimum sentence, counsel was not deficient for failing to advise him on the matter.[2]

**B.      Ground One, Sub-Claim B—Failure to Seek Withdrawal of Plea and Request Psychiatric Examination**

Mr. Owens contends that trial counsel provided ineffective assistance by failing to "move to withdraw the plea and request a psychiatric examination." (Doc. 1 at 5). Before he pled guilty, Mr. Owens underwent a court-ordered psychological evaluation. (Doc. 7-1, Ex. 3). The evaluation report concluded that, although he had "a history of mental health

---

[2] To the extent that Mr. Owens faults counsel for allowing him to plead guilty while "on medication," the Court addresses this issue in connection with Ground One, Sub-Claim B. (Doc. 1 at 5).

difficulty and chronic/severe substance dependence," Mr. Owens was "competent to stand trial." (*Id.* at 5). According to the report, Mr. Owens "communicated with coherence and relevance," and he understood "the concept of legal consequences"—including "what the pleas of guilty, not guilty, and plea bargaining entail." (*Id.* at 3-4). Based on this report, the court found that Mr. Owens was competent to proceed. (*Id.*, Ex. 2). During the plea hearing, Mr. Owens acknowledged that he was "on medication," but he affirmed that he understood "what [was] going on" during the proceedings. (*Id.*, Ex. 9, at 12-14). Counsel agreed that Mr. Owens was "competent." (*Id.* at 22).

Mr. Owens now contends that counsel should have requested "[a]nother evaluation" and a "competency hearing" to "determine if he was competent to proceed [during] the plea hearing." (Doc. 1 at 6). In support, Mr. Owens asserts that "there was evidence showing [his] incompetency throughout the proceedings." (*Id.*)

Even under *de novo* review, this claim fails for lack of prejudice. To show prejudice in this context, Mr. Owens must establish that "if his trial counsel had performed as he [suggests], there is a reasonable probability that the trial judge would have determined that [he] was incompetent to [proceed]." *Oats v. Singletary*, 141 F.3d 1018, 1025 (11th Cir. 1998). The test for determining competence is "whether a criminal defendant [1] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and [2] whether he has a rational as well as factual understanding of the proceedings against him." *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

Mr. Owens fails to establish a reasonable probability that he "would have been found incompetent" had counsel sought another evaluation or requested a competency

hearing. *Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 480 (11th Cir. 2012). He presents no evidence that a second evaluation would have led to a finding of incompetence, nor does he explain how a hearing would have affected the court's ruling. Moreover, although he claims his medication "was affecting him," (Doc. 1 at 6), Mr. Owens offers no evidence that the medication "caused him to be confused and to lack understanding of the proceedings under the legal standard of competence." *Sheley v. Singletary*, 955 F.2d 1434, 1438 (11th Cir. 1992). Accordingly, Mr. Owens fails to meet his burden of "affirmatively prov[ing] prejudice" from counsel's alleged mishandling of the competency issue.[3] *Strickland,* 466 U.S. at 693; *see also Cox v. Sec'y, DOC*, No. 2:11-cv-439-JES-UAM, 2013 WL 4734065, at *6 (M.D. Fla. Sept. 3, 2013) (no prejudice where petitioner "presented no evidence that" he "would have been found incompetent to proceed" and "nothing in the record indicate[d] that [he] was incompetent").

## C.    Ground One, Sub-Claim C—Failure to Inform Mr. Owens of Driver's License Suspension

During sentencing, the trial court imposed "a mandatory six-month driver's license suspension on each one of the drug [counts]." (Doc. 7-1, Ex. 8, at 68). Mr. Owens faults trial counsel for failing to inform him that his driver's license would be suspended if he pled guilty. (Doc. 1 at 6). According to Mr. Owens, he would have "proceeded to trial" had he known about this penalty. (Doc. 7-1, Ex. 13, at 16).

---

[3] Mr. Owens alleges that counsel "coerced [him] to accept the open plea," but he offers no evidence to support that assertion. (Doc. 1 at 5). To the contrary, Mr. Owens affirmed during the plea hearing that nobody had "coerced [him] to enter [the] plea," and that counsel was "doing a great job." (Doc. 7-1, Ex. 9, at 12, 14). Mr. Owens's "unsubstantiated allegations in his federal petition fail to overcome the strong presumption of verity afforded his sworn statements made during the plea colloquy." *Hartley v. Sec'y, Dep't of Corr.*, No. 8:08-cv-854-SDM-TBM, 2012 WL 682744, at *8 (M.D. Fla. Mar. 2, 2012).

The postconviction court reasonably rejected this claim for lack of "prejudice." (*Id.*, Ex. 14, at 5). To show prejudice in the context of a guilty plea, a petitioner must establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "Courts should not upset a plea solely because of *post hoc* assertions from [the petitioner] about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 582 U.S. 357, 369 (2017). Instead, the petitioner must "convince the court that a decision to reject [a] plea [] would have been rational under the circumstances." *Diveroli v. United States*, 803 F.3d 1258, 1265 (11th Cir. 2015). Moreover, because AEDPA applies to this claim, Mr. Owens must show that the postconviction court's finding of no prejudice "was so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Mungin v. Sec'y, Fla. Dep't of Corr.*, 89 F.4th 1308, 1317 (11th Cir. 2024).

Mr. Owens cannot meet this demanding standard. When he pled guilty, he was forty-six years old. (Doc. 7-1, Ex. 9, at 11). Even without the HFO enhancements, he faced a statutory maximum sentence of 125 years' imprisonment. (*Id.*, Ex. 36, at 14). Following his plea, he received a total sentence of thirty years' imprisonment. (*Id.*, Ex. 8, at 56-68). In these circumstances, there is no basis to conclude that counsel's failure to inform Mr. Owens about a six-month driver's license suspension "was a decisive factor in his decision to plead guilty." *Bethel v. United States*, 458 F.3d 711, 719 (7th Cir. 2006). Indeed, the temporary loss of a driver's license is not the type of "particularly severe penalty" that would ordinarily receive great weight in considering a plea. *Lee*, 582 U.S. at 370. In that respect, it is unlike "deportation, . . . registration as a sex offender, civil commitment

proceedings, or the loss of a professional license." *Schwartz v. Jones*, No. 17-CV-61752, 2019 WL 8060133, at *7 (S.D. Fla. Dec. 18, 2019), *adopted by* 2020 WL 905234 (S.D. Fla. Feb. 25, 2020), *aff'd*, 842 F. App'x 442 (11th Cir. 2021). Mr. Owens's "mere allegation that he would have insisted on trial but for his trial counsel's errors . . . is ultimately insufficient to entitle him to relief." *United States v. Clingman*, 288 F.3d 1183, 1186 (10th Cir. 2002).

> **D.    Ground One, Sub-Claim D—Failure to Object to "Misstatement of Law"**

Mr. Owens faults trial counsel for failing to object to the trial court's alleged "misstatement of law" during both the plea hearing and sentencing. (Doc. 1 at 7). According to Mr. Owens, the court "operated under the [mistaken] assumption" that HFO sentencing is "mandatory" rather than "discretionary." (*Id.*) In support, he points to the following excerpt from the plea hearing: "[T]he Court has to consider whether or not [Mr. Owens] qualified as an HFO. The statute is quite clear that I shall sentence him as an HFO unless I find sufficient basis not to sentence him as an HFO, which just takes him out from under on the HFO." (Doc. 7-1, Ex. 9, at 4; *see also* Doc. 7-1, Ex. 13, at 17). Mr. Owens also cites the following statement from sentencing: "At this time, the Court determines that [Mr. Owens] meets the criteria for imposing such a sanction [*i.e.*, HFO status]. Based on that, the Court must sentence the defendant as a habitual felony offender unless the Court makes separate findings that he should not be sentenced as such." (*Id.*, Ex. 8, at 60-61; *see also id.*, Ex. 13, at 17).

As the postconviction court explained, the trial court "did not misstate the law and counsel had no basis to object." (*Id.*, Ex. 14, at 6). As noted above, the "HFO provision allows courts to sentence a defendant who qualifies as an HFO to an extended term of imprisonment." *Foulks*, 306 So. 3d at 1185-86 (emphasis omitted). In other words, the HFO statute "increase[s] the maximum sentence that can be imposed." *Peek*, 143 So. 3d at 1102. "If the defendant is found to qualify for HFO sentencing, the trial court must sentence the defendant as a habitual felony offender"—that is, as an offender subject to an increased statutory maximum—"unless the court finds that such sentence is not necessary for the protection of the public." *State v. McMahon*, 94 So. 3d 468, 476 (Fla. 2012). The court in Mr. Owens's case correctly described (and followed) this procedure. Therefore, the postconviction court reasonably concluded that counsel was not deficient for failing to raise Mr. Owens's meritless objection.[4] *See Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) (noting that "[a] lawyer cannot be deficient for failing to raise a meritless claim").

### E.    Ground One, Sub-Claim E—Allowing Mr. Owens to Accept "Illegal Sentences"

Mr. Owens argues that trial counsel was ineffective for "allowing [him] to accept an illegal sentence for the three [drug possession charges] that were found later to not [qualify for] HFO [sentencing]." (Doc. 1 at 7). As noted above, the trial court sentenced Mr. Owens as an HFO to thirty years' imprisonment for three counts of possession with

---

[4] There is no indication that the trial court mistakenly believed the HFO statute required it to impose mandatory minimum sentences.

intent to sell a controlled substance. (Doc. 7-1, Ex. 10, at 2-3). Without the HFO designation, the statutory maximum for each possession count would have been fifteen years' imprisonment. *President v. State*, 82 So. 3d 889, 890 (Fla. 4th DCA 2011). While his direct appeal was pending, Mr. Owens filed a motion to correct sentencing error, arguing that he was improperly sentenced as an HFO on the three possession counts. (Doc. 7-1, Ex. 10). The court granted the motion, removed the HFO designation from the three counts, and reduced the sentence for each from thirty to fifteen years. (*Id.*, Ex. 11, at 3). Despite this reduction, Mr. Owens's total sentence remained thirty years' imprisonment. Specifically, he would continue to serve concurrent terms of thirty years' imprisonment for sale of a controlled substance,[5] thirty years' imprisonment for possession of a firearm by a felon, ten years' imprisonment for driving while license suspended, and ten years' imprisonment for unlawful use of a two-way communications device. (*Id.*, Ex. 10, at 1-3).

Mr. Owens now contends that if counsel had "done her due diligence in finding [the HFO] error" before he pled guilty, he "wouldn't have accepted the plea" and would have "[taken] his chances at trial." (Doc. 1 at 7). The postconviction court reasonably concluded that Mr. Owens was not "prejudiced" by this error. (Doc. 7-1, Ex. 14, at 7). Mr. Owens was forty-six years old when the plea hearing took place. (*Id.*, Ex. 9, at 11). Even without the HFO enhancements, he was subject to a statutory maximum sentence of 125 years'

---

[5] Under Florida law, "sale . . . of a controlled substance and possession with intent to sell that same substance [are] separate offenses." *Garcia v. State*, 552 So. 2d 1177, 1177 (Fla. 2d DCA 1989). HFO sentencing does not apply to "possession with intent to sell." *Grene v. State*, 702 So. 2d 510, 510 (Fla. 3d DCA 1996). But the HFO statute does apply to the separate offense of sale of a controlled substance. *See Moore v. State*, 748 So. 2d 1094, 1095 (Fla. 3d DCA 2000) ("[T]he habitual offender statute does not prohibit habitualization where the offense at conviction is sale of a controlled substance."). Thus, the court lawfully imposed the HFO-enhanced sentence of thirty years' imprisonment for sale of a controlled substance.

imprisonment. (*Id.*, Ex. 36, at 14). Mr. Owens thus faced the possibility of spending the rest of his life in prison. Crucially, that possibility existed even if his maximum exposure on each possession count was fifteen rather than thirty years. Because the statutory maximum amounted to life in prison regardless of the HFO error, there is no basis to conclude that the overstatement of Mr. Owens's maximum exposure "was a decisive factor in his decision to plead guilty." *Bethel*, 458 F.3d at 719. Therefore, the postconviction court reasonably found no prejudice.[6] *See Day v. Menard*, No. 2:15-cv-234-CR-JMC, 2016 WL 6998629, at *7 (D. Vt. Sept. 27, 2016) (no prejudice from failure to seek dismissal of assault charges before guilty plea because "even if [those] charges were dismissed . . . , [petitioner] still would have been facing multiple felony charges with a potential maximum sentence of life as an habitual offender"), *adopted by* 2016 WL 7015709 (D. Vt. Nov. 30, 2016).

## F.    Ground One, Sub-Claim F—Failure to Inform Mr. Owens of "Viable Defense"

Mr. Owens faults trial counsel for failing to inform him that he had a "viable defense" to the "drug charges." (Doc. 1 at 7). The charging documents alleged that Mr. Owens possessed and sold fentanyl. (Doc. 7-1, Exs. 22-24). According to Mr. Owens, he "did not know that the drugs he sold and possessed were fentanyl." (*Id.*, Ex. 13, at 24).

---

[6] Respondent contends that Sub-Claims E, F, G, and I of Ground One are untimely. (Doc. 7 at 4). The Court need not reach that issue because the claims fail on the merits. *See Trussell v. Bowersox*, 447 F.3d 588, 590 (8th Cir. 2006) ("[B]ecause neither the statute of limitations nor procedural default constitutes a jurisdictional bar to our review, we shall, in the interest of judicial economy, proceed to the merits of [the] petition." (citation omitted)).

Instead, he thought they were heroin. (*Id.* at 26-27). Mr. Owens contends that his "lack of knowledge" could have supplied an "affirmative defense" to the charges. (*Id.* at 26).

The postconviction court rejected this claim, finding no "deficiency on behalf of counsel." (*Id.*, Ex. 14, at 7). It noted that both fentanyl and heroin "are controlled substances, and [Mr. Owens] had the requisite knowledge that he was in possession of a controlled substance." (*Id.* at 7-8). According to the court, "[t]he fact that [Mr. Owens] allege[d] that he was mistaken regarding the type of drug [did] not negate his knowledge and intent to possess and sell a controlled substance." (*Id.* at 8). Thus, "because this would not have been a defense to the charges, [Mr. Owens] fail[ed] to establish that counsel was deficient in failing to advise him of the" proposed defense. (*Id.*)

This ruling was reasonable. "[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a federal court "must defer to the state's construction of its own law when the validity of the [ineffective assistance] claim . . . turns on state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017). Such deference is required here. The postconviction court held that, as a matter of Florida law, Mr. Owens's alleged lack of knowledge "would not have been a defense to the charges." (Doc. 7-1, Ex. 14, at 8). Thus, the postconviction court "already has told us how the issue[] would have been resolved under Florida state law had [counsel] done what [Mr. Owens] argues [she] should have done." *Herring v. Sec'y. Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005). That determination is binding on federal habeas review. *See Pietri v. Fla. Dep't of Corr.*, 641 F.3d 1276, 1284 (11th Cir. 2011) (state court ruling that proposed defense "was not cognizable under Florida law" was "binding on federal court[]" reviewing *Strickland*

claim); *Melendez v. Sec'y, Dep't of Corr.*, No. 8:19-cv-1905-MSS-TGW, 2022 WL 2904872, at *14 (M.D. Fla. July 22, 2022) ("Whether [petitioner] could have asserted a viable prescription defense in a pretrial motion or at trial is an issue of state law, and a state court's determination of state law receives deference in federal court.").

Because the postconviction court "authoritatively decided as a matter of [Florida] law" that the proposed defense would have failed, the remainder of the analysis is straightforward. *Calhoun v. Warden, Baldwin State Prison*, 92 F.4th 1338, 1351 (11th Cir. 2024). Counsel "is not constitutionally ineffective for failing to advise [her client] about a meritless defense." *Ragland v. Sec'y, DOC*, No. 2:16-cv-457-JES-MRM, 2019 WL 4600399, at *8 (M.D. Fla. Sept. 23, 2019). Therefore, the postconviction court reasonably concluded that counsel was not deficient for failing to pursue Mr. Owens's meritless argument.

### G.    Ground One, Sub-Claim G—Mistaken Sentencing Prediction

Mr. Owens alleges that counsel "was ineffective for misadvising him that he would receive ten years at sentencing." (Doc. 1 at 8). The postconviction court rejected this claim for lack of "prejudice." (Doc. 7-1, Ex. 14, at 8). It noted that, during the plea hearing, Mr. Owens "was asked whether he understood that by entering an open plea there was no promise or guarantee as to the outcome of the case." (*Id.*) Mr. Owens "confirmed he understood." (*Id.*) Moreover, Mr. Owens "was advised of the maximum sentence that he could receive." (*Id.*) Thus, in the court's view, "regardless of whether counsel misadvised [Mr. Owens] that he would get a ten-year sentence, the plea colloquy clearly establishe[d] that [he] understood that there was no guarantee as to the sentence if he chose to enter a

18

plea." (*Id.*) Despite this warning, Mr. Owens "chose to continue with his plea." (*Id.*) Therefore, the court held that he could not show prejudice from counsel's alleged misconduct. (*Id.*)

The rejection of this claim was reasonable. When counsel mistakenly promises a certain sentencing outcome, a petitioner cannot show prejudice if he was advised during the plea hearing of "the consequences of the plea agreement, range of punishment, and sentencing contingencies." *United States v. Wilson*, 245 F. App'x 10, 12 (11th Cir. 2007); *see also United States v. Carson*, 32 F.4th 615, 622 (6th Cir. 2022) ("When an attorney erroneously promises a certain sentencing outcome, a defendant cannot show prejudice if he was accurately advised during the plea colloquy."). During the plea hearing, the trial court (1) informed Mr. Owens of the maximum sentence for each count, (2) confirmed that he understood "there [were] no promises or guarantees as to what the sentence outcome may be," and (3) explained the other consequences of pleading guilty. (Doc. 7-1, Ex. 9, at 11-18). Thus, "[t]o the extent [counsel] may have expressly or implicitly promised a guaranteed sentence or [to] the extent [Mr. Owens] perceived [her] advice about the expected sentence's length as such, the change of plea colloquy cured any such false impression." *Inchierchiere v. Fla. Dep't of Corr.*, No. 17-14260-CIV, 2019 WL 11718812, at *15 (S.D. Fla. Apr. 2, 2019), *adopted by* 2019 WL 11718809 (S.D. Fla. May 31, 2019).

## H.    Ground One, Sub-Claim H—Cumulative Error

Mr. Owens contends that counsel's alleged misconduct amounted to "cumulative error." (Doc. 1 at 8). "Under the cumulative error doctrine, a sufficient agglomeration of otherwise harmless or nonreversible errors can warrant reversal if their aggregate effect is

to deprive the defendant of a fair trial." *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014). A cumulative error claim "must fail," however, where none of the "individual claims of error" has "any merit." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). Here, each individual claim of ineffective assistance lacks merit. Thus, Mr. Owens's cumulative error claim necessarily fails.

## I.    Ground One, Sub-Claim I—Failure to Hold Resentencing Hearing with Mr. Owens Present

As noted above, while the direct appeal was pending, the trial court corrected a sentencing error at Mr. Owens's request. (Doc. 7-1, Ex. 11). Specifically, the court found that Mr. Owens had been improperly sentenced as an HFO on the three counts of possession with intent to sell a controlled substance. (*Id.* at 2). The court removed the HFO designation from the three counts and reduced the sentence for each from thirty to fifteen years' imprisonment. (*Id.* at 3). Because the remaining counts were unaffected, however, Mr. Owens's total sentence remained thirty years' imprisonment. Mr. Owens now contends that the court violated his constitutional rights by correcting the sentencing error "without conducting a sentencing hearing [in Mr. Owens's presence]." (Doc. 1 at 8).

Even under *de novo* review, this claim fails. "[A] correction of an illegal sentence does not constitute a resentencing requiring the presence of the defendant, so long as the modification does not make the sentence more onerous." *United States v. Jackson*, 923 F.2d 1494, 1497 (11th Cir. 1991). Here, the court did not "impose a more onerous total sentence than the original sentence." *United States v. Reynolds*, No. 23-11405, 2023 WL 6475434, at *1 (11th Cir. Oct. 5, 2023). Instead, it "imposed the same total sentence" of

thirty years' imprisonment. *Id.* Thus, Mr. Owens was not entitled to a resentencing hearing. *See United States v. Malol*, 315 F. App'x 205, 208 (11th Cir. 2008) ("[Defendant] does not need to be present at resentencing because the modification does not make the sentence more onerous.").

### J.    Ground Two—Failure to Hold Competency Hearing

Lastly, Mr. Owens contends that the trial court violated his right to due process by failing to hold a competency hearing. (Doc. 1 at 10). Respondent correctly contends that this claim is procedurally defaulted. (Doc. 7 at 6-7). Mr. Owens raised his due process claim in a successive Rule 3.850 motion. (Doc. 7-1, Ex. 17, at 2-3). The postconviction court held that the claim was "not cognizable under Rule 3.850" because it should have been raised on direct appeal. (*Id.*, Ex. 18, at 2; *see also Watts v. State*, 82 So. 3d 1215, 1216 n.1 (Fla. 2d DCA 2012) ("These two claims alleged that the trial court erred by failing to have [defendant] examined by at least three mental health experts and by failing to hold a competency hearing. Because these claims consist of allegations of trial court error, they are procedurally barred [under Rule 3.850].")).

Because "the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds," Ground Two is procedurally defaulted. *LeCroy v. Sec'y, Fla. Dep't Corr.*, 421 F.3d 1237, 1260 n.25 (11th Cir. 2005). To overcome the default, Mr. Owens must show either cause and prejudice or a miscarriage of justice. *See Mincey v. Head*, 206 F.3d 1106, 1135 (11th Cir. 2000) ("It is well-settled that federal habeas courts may not consider claims that have been defaulted in state court . . . unless the petitioner can show 'cause' for the default and resulting 'prejudice,' or 'a fundamental

miscarriage of justice.'"). Mr. Owens fails to make the required showing. Thus, Ground Two is barred from federal habeas review.

## IV.  Conclusion

Accordingly, the Court **ORDERS**:

1. Mr. Owens's petition (Doc. 1) is **DENIED**.

2. The **CLERK** is directed to enter judgment against Mr. Owens and to **CLOSE** this case.

3. Mr. Owens is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. Owens must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Owens has not made the requisite showing. Because Mr. Owens is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on April 10, 2025.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE